1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                   FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9    PAMELA PEMBERTON,                          Case No. 1:20-cv-00568-NONE-EPG

10                  Plaintiffs,                 FINDINGS AND RECOMMENDATIONS
                                                RECOMMENDING THAT PLAINTIFF'S
11        v.                                    MOTION TO REMAND BE DENIED

12   LONGS DRUG STORES CALIFORNIA,              (ECF No. 6)
     L.L.C.,
13
                    Defendant.
14

15

16        Before the Court on referral from the District Judge (ECF No. 7) is plaintiff Pamela

17   Pemberton's motion to remand this action to the Stanislaus County Superior Court. (ECF No. 9.)

18   For the reasons that follow, the Court will recommend that the motion be denied.[1]

19                                    **BACKGROUND**

20        Plaintiff's complaint alleges the following: Plaintiff was hired by Defendant, Longs Drug

21   Stores of California, currently doing business as CVS Pharmacy, in 1975. Her last-held title with

22   Defendant was Operations Manager. (ECF No. 3-1 at 11.) Plaintiff injured her back while at work

23   in one of Defendant's stores located in Oakdale, California. This injury limited Plaintiff's ability

24   to work, and she was prescribed lifting restrictions for the injury, which Defendant granted.

25        In April 2015, Plaintiff was assigned to oversee a store remodel in Tracy, California. This

26   assignment ended in July 2015. Plaintiff was not required to do any heavy lifting during this

27   _____

28   [1] The Court deems the motion suitable for decision without oral argument pursuant to
     Local Rule 230(g). (*See* ECF No. 12.)

                                             1

1    assignment. (*Id.*) Plaintiff was then transferred to a store in Modesto, California, where she

2    worked for approximately one year. During this time, her lifting restrictions were generally

3    accommodated. (*Id.*)

4           In around November 2016, Plaintiff was transferred to a store in Riverbank, California.

5    She was initially supervised by the store manager, Howard Hanes, and her disability was

6    accommodated. However, Hanes left after about six months and was replaced by Joe Esquivel.

7    While Esquivel was store manager, Plaintiff was routinely compelled to lift heavy objects and

8    otherwise violate her work restrictions. This exacerbated Plaintiff's disability such that she was

9    taken off work by her doctor in October 2017. (*Id.*)

10          Plaintiff applied for and was granted leave under the Family Medical Leave

11   Act/California Family Rights Act. She also continued to request accommodation for her disability

12   and supplied medical certification from her health care provider. This certification specified

13   Plaintiff's work restrictions and noted that Defendant was not complying with the restrictions.

14   (ECF No. 3-1 at 12.) Defendant continued to refuse to accommodate Plaintiff and failed to engage

15   in a timely, good faith interactive process to determine reasonable accommodations. (*Id.*)

16          In April 2019, Plaintiff spoke with Tracy Sullivan, Defendant's Reasonable

17   Accommodation Partner. Sullivan informed Plaintiff that Defendant would not extend her leave

18   of absence. Plaintiff pointed out that her work restrictions were previously accommodated,

19   emphasizing her desire for reasonable accommodations and not a continued leave of absence.

20          Plaintiff's employment was terminated May 2, 2019. (ECF No. 3-1 at 12.) On December

21   20, 2019, Plaintiff requested that Defendant provide copies of her payroll and personnel records.

22   Defendant did not comply with this records request. (*Id.*)

23          On January 24, 2020, Plaintiff filed her complaint in Stanislaus County Superior Court.

24   (ECF No. 3-1 at 9.) In the complaint, Plaintiff raises state law claims against Defendant, including

25   claims for disability discrimination, retaliation, failure to accommodate, failure to prevent

26   discrimination and retaliation, and failure to produce personnel and payroll records upon request,

27   all in violation of state law. (*Id.*) The complaint does not specify a particular amount of damages,

28   but seeks compensatory, special, and general damages; punitive and/or exemplary damages;

2

1   statutory penalties; injunctive relief; statutory attorneys' fees and costs; prejudgment and

2   postjudgment interest; and "such other and further relief as the Court deems just and proper."

3   (ECF No. 3-1 at 17-18.)

4          The summons and complaint were served on Defendant on March 19, 2020. (ECF No. 3-1

5   at 3.) On April 20, 2020, Defendant removed the case to federal court pursuant to 28 U.S.C.

6   § 1446(b) on the basis of diversity jurisdiction, 28 U.S.C. § 1332. (ECF No. 1.) On May 18, 2020,

7   Plaintiff filed the pending motion to remand. (ECF No. 6.) Defendant filed an opposition on June

8   12, 2020. (ECF Nos. 8, 9.) Plaintiff filed a reply in support of remand on June 19, 2020. (ECF

9   No. 11.)

10                                  **LEGAL STANDARD**

11         A defendant in state court may remove a civil action to federal court so long as that case

12  could originally have been filed in federal court. 28 U.S.C. § 1441(a); *City of Chicago v. Int'l*

13  *Coll. of Surgeons*, 522 U.S. 156, 163 (1997). Thus, removal of a state action may be based on

14  either diversity jurisdiction or federal question jurisdiction. *City of Chicago*, 522 U.S. at 163;

15  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Here, removal is based on diversity

16  jurisdiction.

17         In a diversity action, the removing defendant has the burden of establishing the amount in

18  controversy by a preponderance of the evidence. *Rodriguez v. AT & T Mobility Servs. LLC*, 728

19  F.3d 975, 977 (9th Cir. 2013). Jurisdiction is analyzed based upon the pleadings filed at the time

20  of removal without reference to any subsequent pleadings filed in the action. *Sparta Surgical*

21  *Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998).

22         The removal statute is strictly construed, and removal jurisdiction is to be rejected in favor

23  of remand to the state court if there are doubts as to the right of removal. *Nevada v. Bank of Am.*

24  *Corp.*, 672 F.3d 661, 667 (9th Cir. 2012); *Provincial Gov't of Marinduque v. Placer Dome, Inc.*,

25  582 F.3d 1083, 1087 (9th Cir. 2009) ("The removal statute is strictly construed against removal

26  jurisdiction."). The district court must remand the case "[i]f at any time before final judgment it

27  appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *see also*

28  *Smith v. Mylan, Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014); *Bruns v. Nat'l Credit Union Admin.*,

3

1   122 F.3d 1251, 1257 (9th Cir. 1997) (holding that remand for lack of subject matter jurisdiction

2   "is mandatory, not discretionary").

3                                                    **ANALYSIS**

4          Plaintiff does not dispute that she and Defendant are citizens of different states but

5   contends that the case must be remanded because Defendant has not met its burden of

6   demonstrating that the amount in controversy exceeds the $75,000 threshold of 28 U.S.C.

7   § 1332(a). Plaintiff does not affirmatively state that the amount in controversy is less than

8   $75,000. Rather, Plaintiff asserts that remand is appropriate because Defendant has provided a

9   "mere averment" that the amount in controversy exceeds $75,000, and that this is insufficient.

10  Plaintiff contends that, to meet its burden, Defendant is required to provide summary judgment-

11  type evidence demonstrating by a preponderance of the evidence that the amount in controversy

12  exceeds $75,000. (ECF No. 6 at 2; ECF No. 11 at 2.)

13         To the extent Plaintiff is challenging Defendant's petition for removal, the challenge fails

14  as Defendant was not required to submit evidence at that stage of the proceedings. Rather, "a

15  defendant's notice of removal need include only a plausible allegation that the amount in

16  controversy exceeds the jurisdictional threshold," and "the defendant's amount-in-controversy

17  allegation should be accepted when not contested by plaintiff or questioned by the court." *Dart*

18  *Cherokee Basin Operating, Co. v. Owens*, 574 U.S. 81, 87, 89 (2014).

19         Here, the petition and notice of removal alleges that the complaint, on its face,

20  "contemplates a matter in controversy that exceeds the sum or value of $75,000, exclusive of

21  interest and costs." (ECF No. 1.) The petition and notice goes on to set forth the basis of this

22  assertion, stating that if plaintiff prevailed, lost wages alone would be more than $144,000 based

23  on the case taking 25 months from the date of removal to resolve. (ECF No. 1 at 6-7.) This is

24  sufficient for purposes of the removal petition.

25         Once a plaintiff contests the defendant's allegations in support of removal, "removal ... is

26  proper on the basis of an amount in controversy asserted" by the defendant only "if the district

27  court finds, by the preponderance of the evidence, that the amount in controversy exceeds the

28  jurisdictional threshold." *Dar Cherokee*, 574 U.S. at 88; 28 U.S.C. § 1446(c)(2)(B). "In such a

                                                        4

1     case, both sides submit proof and the court decides, by a preponderance of the evidence, whether

2     the amount-in-controversy requirement has been satisfied." *Id.* "Discovery may be taken with

3     regard to that question. In case of a dispute, the district court must make findings of jurisdictional

4     fact to which the preponderance standard applies." *Id.* at 88-89.

5            Here, Plaintiff is contesting Defendant's allegations regarding the amount in controversy.

6     Thus, the question before the Court is whether Defendant has submitted evidence sufficient to

7     demonstrate it is more likely than not that, if Plaintiff prevails on all of her claims, total damages

8     and attorneys' fees will exceed $75,000. *See Narayan v. Compass Grp. USA, Inc.*, 284 F. Supp.

9     3d 1076, 1089-90 (E.D. Cal. 2018) ("Defendant must prove that the amount in controversy is

10    'more likely than not' to exceed the jurisdictional minimum.") (citation omitted).

11           "Wholly conclusory allegations as to the amount in controversy are insufficient, and the

12    court cannot base [its] jurisdiction on a [d]efendant's speculation and conjecture." *Id.* at 1090

13    (citations and quotation marks omitted) (alterations in original). "Nonetheless, [t]he burden is not

14    daunting, and 'a removing defendant is *not* obligated to research, state, and prove the plaintiff's

15    claims for damages." *Id*. (citations and quotation marks omitted) (emphasis and alteration in

16    original).

17           In *Narayan v. Compass Grp. USA, Inc*, as here, the plaintiff contested the defendant's

18    allegations that the amount in controversy was met. Thus, the burden was on the defendant to

19    establish by a preponderance of the evidence that the amount-in-controversy requirement was

20    met. 284 F. Supp. 3d at 1090. The plaintiff in *Narayan* also asserted that the defendant was

21    required to provide summary judgment-type evidence to establish that the amount in controversy

22    requirement was satisfied. *Id.* at 1090. The court rejected that assertion:

23           Here, however, the question is less whether Defendant made a plausible allegation—he
              has—than it is what happens now that Plaintiff has contested the amount. *Dart Cherokee*,
24           as both parties point out, explains that § 1445(c)(2)(B) authorizes the submission of
              evidence by both parties once "plaintiff contests, or the court questions, the defendant's
25           allegations." Plaintiff contends that Defendant is therefore "required to provide 'summary
              judgment type evidence' to establish that the amount in controversy is met." Pl.'s Mem.
26           Supp. Mot. Remand, ECF No. 16, 3:19. Not so. First, as Defendant points out, Plaintiff
              fails to assert that he is seeking less than $75,000. Second, the evidence currently before
27           the Court is sufficient to ascertain whether the amount in controversy is satisfied.

28    *Id.*

In the present case, Plaintiff also asserts that Defendant must submit summary judgment-type evidence to meet its burden of demonstrating the amount in controversy requirement is met. As *Narayan* states, "Not so." 284 F. Supp. 3d at 1090. First, as in *Narayan*, Plaintiff does not affirmatively assert that she is seeking less than $75,000. Second, the evidence submitted by Defendant is sufficient to ascertain that the amount-in-controversy requirement is satisfied here.

"In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008) (citation omitted). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Id.* (citation omitted).

Further, "the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal)." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414 (9th Cir. 2018). "Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Id.* at 414-15.

Defendant has demonstrated that the amount-in-controversy requirement is met here. Defendant has submitted what is represented to be a true and correct copy of Plaintiff's employee profile maintained in the regular course of business as a business record. (ECF No. 3 at 2, ECF No. 3-3.) This employee profile includes a history of Plaintiff's hourly wages from 2009 to her termination in May 2019. (ECF No. 3-3.) Her hourly rate at the time of her termination in May 2019 was $23.15. (*Id.*)

Defendant has also submitted statistical information from the Administrative Office of the United States Courts Federal District Court Management Statistics showing that as of December 31, 2019, the median time from filing a civil action to trial is 32.2 months in the Eastern District of California. (ECF No. 9 at 2; ECF No. 9-1.)

Based on this evidence, Defendant has calculated estimated lost wages of approximately $173,000. This calculation is based on Plaintiff's last hourly rate of $23.15 per hour, for a rate

1   $926 per week multiplied by 187 weeks. The 187 weeks is the amount of time between Plaintiff's

2   termination (May 2019) and the estimated date on which trial would be completed (December

3   2022). The estimated date on which trial would be completed is, in turn, based on the median

4   time of 32.2 months that it takes from filing a civil action in the Eastern District to final

5   disposition through trial.[2] (ECF No. 8 at 7.) The Court finds this calculation to result in a

6   reasonable estimate of lost wages damages. Because this amount alone satisfies the amount-in-

7   controversy requirement, Defendant has met its burden and the motion to remand should be

8   denied.[3]

9       In her reply brief, Plaintiff contends that the information provided by Defendant is

10  insufficient to meet its burden. First, Plaintiff contends that there is no indication of the number of

11  hours Defendant used to reach its total weekly rate of $926 for Plaintiff's wages. (ECF No. 11 at

12  4.) However, a simple calculation demonstrates that the number of hours used by Defendant is 40

13  hours per week ($23.15 per hour x 40 hours per week = $926).

14      Second, Plaintiff challenges Defendant's use of the statistical information regarding the

15  median time it takes for a case to proceed through trial. Plaintiff argues that use of the median

16  length of time is conclusory as this median represents cases that range from complex class actions

17  with "multiple plaintiffs and multiple defendants (which can take years to litigate) to very simple,

18  single-plaintiff, single-defendant actions," such as the present one. (*Id.* at 6.) Plaintiff thus argues

19  that "these statistics do not necessarily indicate that Plaintiff's case will take 32.2 months." (*Id.*)

20      Although the Court agrees that the statistics do not *necessarily* indicate that Plaintiff's

21  case will take 32.2 months, the Court notes that the median is merely a method to estimate how

22

[2] In the removal petition, Defendant inadvertently used the statistics from the Northern District of

23  California, which shows a median time from filing to trial of only 25 months, and thus calculated lost wages at only $144,000. (ECF No. 1 at 6-7; ECF No. 3 at 3-4.)

24  [3] Defendant also calculated estimated attorneys' fees. Specifically, Defendant estimated that Plaintiff's counsel would spend 60 hours on pre-trial fact discovery, 15 hours on pre-trial expert

25  discovery, 40 hours preparing for trial, and 45 hours attending a 5-day jury trial, for a total of 160 hours. (ECF No. 8 at 8-9.) Based on the $455 that Mr. Briscoe represented as his hourly rate in a

26  previous case, Defendant estimated attorneys' fees in the amount of $72,800. Thus, attorneys'

27  fees alone would almost meet the amount in controversy requirement without considering any damages. Because the Court finds the amount-in-controversy requirement met based only on lost

28  wages, the Court need not consider estimated attorneys' fees.

7

1    long this case might take to proceed to trial, and that Plaintiff's case could take even longer than

2    the median to go to trial. It is also worth noting that Plaintiff does not propose an alternative

3    method of estimating the length of time that this case might take to proceed through trial.[4]

4          The Court finds Defendant's use of the median from the Eastern District statistics to be a

5    reasonable method of estimating the length of time it will take for this case to proceed through

6    trial and thus a reasonable method to use to calculate estimated lost wages. Moreover, even if this

7    case would proceed through trial in half the median time—which is highly unlikely in light of the

8    judicial emergency currently facing the Eastern District[5]—the lost wages would be approximately

9    $108,000,[6] and thus would still satisfy the amount in controversy requirement.

10         Third, Plaintiff argues that Defendant has not demonstrated that Plaintiff will still be

11   unemployed in May 2002, three years after her termination. (ECF No. 6.) However, as Defendant

12   points out, this is a potential affirmative defense for mitigation of damages. A "potential defense

13   does not reduce the amount in controversy for purposes of establishing federal jurisdiction."

14   *Perez v. Alta-Dena Certified Dairy, LLC*, 647 F. App'x 682, 684 (9th Cir. 2016); *Jackson v.*

15   *Compass Grp. USA, Inc.*, 2019 WL 3493991, at *4 (C.D. Cal. July 31, 2019) ("mitigation of

16   damages is an affirmative defense," which "does not reduce the amount in controversy," and is

17   "therefore not relevant to the Court's determination of the amount in controversy").

18         Finally, Plaintiff argues in her reply brief that Defendant has not provided evidence

19   demonstrating the number of hours per week that Plaintiff worked and whether she worked the

20   same hours every week. (ECF No. 11 at 4.) The Court is unpersuaded by this new argument.

21   Plaintiff does not claim that she worked less than 40 hours per week, but simply asserts that

22   Defendant has not proved the number of hours she did work. Moreover, Plaintiff was on notice at

23   the time she filed her motion to remand that Defendant had calculated her wages at $926 per

24

25   [4] The Court also notes that Plaintiff could have but did not raise this argument in her opening
     brief, instead arguing there that Defendant used the statistics from the wrong district. (ECF No.
26   6.)
     [5] (*See* ECF No. 4-1, Standing Order discussing judicial emergency in the Eastern District of
27   California.)
     [6] This is based on a trial of August 2021, which results in 27 months, or 117 weeks between the
28   May 2019 termination and trial. At $926/week, lost wages would be approximately $108,000.

1   week as that amount was set forth in Defendant's removal petition. (*See* ECF No. 1 ("Her hourly

2   rate was $23.15 (approximately $926 per week)".) Despite this, Plaintiff did not take issue with

3   that amount in her opening brief. (ECF No. 6.) Instead, Plaintiff challenged Defendant's use of

4   outdated statistics from the Northern District in estimating the length of time for the case to go

5   through trial. Only in her reply brief does she raise an argument regarding the number of hours

6   she worked each week (and thus her weekly wages), thereby depriving Defendant of the

7   opportunity to rebut the argument.

8        The Court finds that it is reasonable to assume that Plaintiff worked 40 hours per week.

9   Further, the Court notes that even if she worked on average only 30 hours per week, making her

10  average weekly wages $694, the amount in controversy would still be met: her estimated lost

11  wages, based on the shorter time frame of 16.1 months from filing to trial (117 weeks from

12  termination to trial) would be approximately $81,000 ($694 x 117 weeks); and based on the more

13  realistic longer time frame of 32.2 months from filing to trial (187 weeks from termination to

14  trial) would be approximately $129,778.

15                              **CONCLUSION**

16       For the reasons set forth above, the Court recommends that Plaintiff's motion for remand

17  (ECF No. 6) be DENIED.

18       These findings and recommendations will be submitted to the United States district judge

19  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within <u>fourteen</u>

20  <u>(14) days</u> after being served with these findings and recommendations, the parties may file

21  written objections with the Court. The document should be captioned "Objections to Magistrate

22  Judge's Findings and Recommendations."

23  \\\

24  \\\

25  \\\

26  \\\

27  \\\

28  \\\

1    The parties are advised that failure to file objections within the specified time may result

2    in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014)

3    (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

4

     IT IS SO ORDERED.

5

6        Dated:   **July 24, 2020**                              /s/ *Erica P. Grosjean*

7                                                      UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28